<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EDUARDO FRANCISCO QUEZADA-RUIZ,<br><br>              Petitioner,<br><br>      v.<br><br>JOHN NASH,<br><br>              Respondent. | **Hon. Freda L. Wolfson**<br><br>Civil No. 04-2081 (FLW)<br>Civil No. 04-5646 (FLW)<br><br>**OPINION** |

**APPEARANCES:**

    EDUARDO FRANCISCO QUEZADA-RUIZ, #05757-003
    F.C.I. Fort Dix, PO Box 7000
    Fort Dix, New Jersey  08640
    Petitioner <u>Pro</u> <u>Se</u>

    JOHN ANDREW RUYMANN, ASSISTANT UNITED STATES ATTORNEY
    CHRISTOPHER J. CHRISTIE, UNITED STATES ATTORNEY
    402 East State Street, Room 430
    Trenton, New Jersey  08608
    Attorney for Respondents

<u>**WOLFSON**</u>, District Judge:

    Eduardo Francisco Quezada-Ruiz, an inmate confined at the Federal Correctional Institution at Fort Dix, New Jersey ("FCI Fort Dix"), filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, <u>see</u> <u>Quezada-Ruiz v. DeRosa</u>, Civil No. 04-2081 (FLW), and a Complaint for damages and injunctive relief, <u>see</u> <u>Quezada-Ruiz v. Nash</u>, Civil No. 04-5646 (FLW).[1]  In the habeas action, Petitioner challenges a detainer for possible removal lodged

---

    [1] Petitioner filed a second petition under § 2241 challenging his sentence.  <u>See</u> <u>Quezada-</u>
(continued...)

against him at FCI Fort Dix by the Department of Homeland Security (DHS), formerly the Immigration and Naturalization Service ("INS").  In the Complaint, Petitioner challenges the Bureau of Prison's ("BOP") determination that he is not eligible for placement in a community corrections center ("CCC"), see 18 U.S.C. § 3624(c), or early release pursuant to 18 U.S.C. § 3621(e)(2)(B) to complete the community stage of the residential drug abuse treatment program.[2]  After careful consideration, the Court will dismiss both actions because the BOP cancelled the challenged detainer and properly determined that Petitioner is not eligible for placement in a CCC and early release.

## I.  BACKGROUND

Except as noted, the facts are not in dispute.  Petitioner is currently serving a sentence imposed by Senior Judge Charles R. Butler, Jr., in the United States District Court for the Southern District of Alabama on April 12, 1996, amended October 16, 1996, after he was extradited from Colombia.[3]  Based on his plea of guilty to one count of conspiracy to distribute and possess with intent to distribute cocaine, see 21 U.S.C. § 846, Judge Butler sentenced Petitioner to a 168-month term of imprisonment, followed by five years of supervised release.  See United States v. Quezada-Ruiz, Docket No. 92-cr-0048 (CB-2) j. conviction (S.D. Ala. filed

---

[1](...continued)
Ruiz v. Nash, Civil No. 04-5544 (FLW).  The Court has considered that petition in a separate Opinion.

[2] In the Complaint, Civil Action No. 04-5646 (FLW), Petitioner seeks damages and injunctive relief for violation of the Privacy Act.  He asserts that Warden John Nash violated the Privacy Act by willfully and intentionally failing to remove the "Deportable Alien" public safety factor from his prison records and thereby causing him to be ineligible for placement in a CCC and early release under 18 U.S.C. § 3621(e)(2)(B).

[3] For the sake of simplicity, the Court will refer to Quezada-Ruiz as Petitioner.

April 12, 1996).  According to the docket, the judgment of conviction provides that, upon completion of the term of imprisonment, Petitioner is to be delivered to an immigration official for possible removal and, if he is not removed, he must participate in a program of testing and treatment for drug/alcohol abuse.  The amended judgment provides that, "If not deported, within 72 house from custody of the BOP, the defendant shall report in person to the Probation Office in the district to which he is released."  Id.

On July 15, 2003, the DHS lodged a detainer against petitioner at FCI Fort Dix indicating that an investigation had been initiated to determine whether Petitioner was subject to removal from the United States ("removal detainer").  The removal detainer requests notice of Petitioner's release date, which the BOP projects as February 20, 2006.  After challenging the detainer through the BOP's Administrative Remedy Program, Petitioner filed the Petition for Writ of Habeas Corpus, Civil No. 04-2081 (FLW).  The Petition raises two grounds for relief:  (1) the removal detainer violates the Extradition Agreement between the United States and Colombia, whereby Petitioner was extradited to the United States for criminal drug prosecution, and the rule of specialty, which prohibits the United States from proceeding against Petitioner for any non-extraditable act, including a removal proceeding, until he has had a reasonable time to return to Colombia; and (2) the failure of the DHS and BOP to recognize his non-deportable status and the BOP's determination that he is not eligible for placement in a community corrections center ("CCC") and early release violates the rule of specialty.  Petitioner seeks a writ ordering the government to cancel the removal detainer and the "Deportable Alien" public safety factor, and to grant him early release and immediate placement in a CCC.

3

The government filed an Answer to the Petition, accompanied by the declarations of Kisha Hebbon, Attorney Advisor for the BOP at FCI Fort Dix, and Susan G. Roy, Assistant Chief Counsel, DHS, Newark, New Jersey, with attached exhibits.  Respondent contends that, by Notice of Action dated July 15, 2004, the DHS cancelled the removal detainer dated July 15, 2003, and replaced it with a detainer "for notification purposes only."  (Decl. of Susan G. Roy, dated July 21, 2004, Form I-247.)  The notification-only detainer provides:

> Please accept this notice as a detainer.  This is for notification purposes only and does not limit your discretion in any decision affecting the offender's classification, work and quarters assignments, or other treatment which he or she would otherwise receive.

(Id.)

Although the notification-only detainer contains checkoff boxes to indicate the inmate's immigration status, none of the boxes is checked and the notification-only detainer does not provide any indication of Petitioner's immigration status.  Nor does the notification-only detainer request notice of Petitioner's release date, although it contains a checkoff box for requesting 30 days advance notice of release.  Susan Roy explains the significance of the notification-only detainer as follows:

> The purpose of the notification detainer is to advise DHS/ICE when the petitioner is scheduled to be released from custody and returned to Colombia and/or Chile in accordance with the terms of the extradition treaty.  DHS/ICE will have no further interest in the petitioner unless he does not leave the country in accordance with the terms of the extradition treaty, but instead manifests an intent to remain in the United States.
>
> Should the petitioner manifest such an intent, he will be considered an intending immigrant, and in that situation, will be subject to removal proceedings.  See Matter of Badalamenti, 19 I&N Dec. 623 (BIA 1988).

(Roy Decl. ¶¶ 7-8.)

      Respondent asks this Court to dismiss the Petition.  First, Respondent argues that Petitioner failed to exhaust the BOP's Administrative Remedy Program.  Second, Respondent contends that, by cancelling the immigration detainer and replacing it with a notification-only detainer, the government complied with the Extradition Agreement and the rule of specialty.  Third, Respondent maintains that Petitioner has no constitutionally protected liberty interest in early release or placement in a CCC, and that he is not eligible for early release because he does not satisfy the eligibility criteria for placement in a CCC.  See 28 C.F.R. § 550.58(a)(1)(v); Program Statement 7310.04, ¶ 10 (Dec. 16, 1998).

      In his Reply to the Answer and in the Complaint docketed as Civil No. 04-5646 (FLW), Petitioner asserts that he exhausted the BOP's Administrative Remedy Program when he presented the issue to the Central Office on August 11, 2004.  Petitioner challenges the BOP's determination that he is not eligible for placement in a CCC or early release pursuant to 18 U.S.C. § 3621(e)(2)(B), arguing that the Extradition Agreement and the rule of specialty, see 18 U.S.C. § 3192, allow him to remain in the United States until he has completed the five-year period of supervised release following his term of imprisonment and been given a reasonable period of time to leave the country.  Petitioner maintains that, because he is not subject to removal until after completion of the five-year period of supervised release and a reasonable period of time to depart, he is eligible for CCC placement and early release and the BOP's refusal to place him in a CCC pursuant to 18 U.S.C. § 3621(e) was an abuse of discretion and violates the rule of specialty.

## II.  DISCUSSION

A.  Jurisdiction

Section 2241 of Title 28 of the United States Code provides in relevant part:

> The writ of habeas corpus shall not extend to a prisoner unless– . . .
> He is in custody in violation of the Constitution or laws or treaties
> of the United States.

28 U.S.C. § 2241(c)(3).

"Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." Coady v. Vaughn, 251 F.3d 480, 485-486 (3d Cir. 2001).  A petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the district where the prisoner is confined provides a remedy "where petitioner challenges the effects of events 'subsequent' to his sentence." Gomori v. Arnold, 533 F.2d 871, 874 (3d Cir. 1976).

This Court has subject matter jurisdiction under § 2241 to consider Petitioner's challenge to the denial of CCC placement and early release because Petitioner seeks not to vacate or correct his sentence, but to challenge the execution of the sentence by the BOP.  See Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1991); 2 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 41.2b (3rd ed. 1998).  Moreover, if the BOP incorrectly determined his eligibility for CCC placement and early release, this error carries a potential for a miscarriage of justice that can be corrected through habeas corpus.  Murray v. Carrier, 477 U.S. 478, 495 (1986); Barden, 921 F.2d at 479.

B.  Exhaustion

As a preliminary matter, Respondent maintains that the Petition is subject to dismissal because Petitioner failed to appeal the denial of his administrative remedy by the Regional Director to the General Counsel's Office.  Specifically, Kisha Hebbon avers that the computerized index of administrative appeals indicates that Petitioner has not filed an administrative remedy with the Cental Office.  Petitioner counters that dismissal on non-exhaustion grounds is not appropriate because he appealed to the General Counsel on August 11, 2004; the detainer at issue is the seventh detainer lodged by immigration officials at various institutions since 1996 and he sought administrative relief each time a detainer was lodged; and exhaustion would in any event be futile.  (Reply to Answer, Exhaustion of Administrative Remedies.)  The government did not respond to Petitioner's assertion that he presented his claim to  the General Counsel on August 11, 2004.  Under these circumstances, this Court will not dismiss the Petition for failure to exhaust administrative remedies.

C.  Standard of Review

Petitioner does not dispute that BOP's regulations exclude from consideration for early release inmates "who are not eligible for participation in a community-based program as determined by the Warden on the basis of his or her professional discretion."  28 C.F.R. § 550.58(a)(1)(v).  Nor does he dispute that inmates "who are assigned a 'Deportable Alien' Public Safety Factor . . . shall not ordinarily participate in CCC programs" under Program Statement 7310.04, ¶ 10.b.  In essence, the question presented is whether the BOP's determination that Petitioner is not eligible for CCC placement and early release under 18 U.S.C. § 3621(e)(2)(B) and 28 C.F.R. § 550.58(a)(1)(v) violates the rule of specialty and is arbitrary and capricious

under the Administrative Procedure Act. See 5 U.S.C. § 706(2)(a); Lopez v. Davis, 531 U.S. 230, 240 (2001); Edwards v. United States, 41 F.3d 154, 156 (3d Cir. 1994).

The APA requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[4] A reviewing court must find that the actual choice made by the agency was neither arbitrary nor capricious. C.K. v. N.J. Dep't of Health & Human Services, 92 F.3d 171, 182 (3d Cir. 1996); see also Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 414 (1971), ("agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' ...."), overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977) (quoting 5 U.S.C. § 706(2)(A)). "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Auto. Ins., 463 U.S. 29, 43 (1983) (citation and internal quotation marks omitted); accord Bowman Transp., Inc. v. Arkansas-Best Freight System, 419 U.S. 281, 285 (1974).

To make this finding that agency action was not arbitrary or capricious, a court must review the administrative record that was before the agency at the time of the decision, and "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . Although this inquiry into the facts is to be

---

[4] See Lopez, 531 U.S. at 240 (BOP may categorically exclude inmates from eligibility for early release under 18 U.S.C. § 3621(e)(2)(B), subject to its obligation to interpret statute in manner that is not arbitrary and capricious, see 5 U.S.C. § 706(2)(A)).

searching and careful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency." Overton Park, 401 U.S. at 416.

Reversal of agency action is required "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if [the court] simply cannot evaluate the challenged agency action on the basis of the record before [it]." C.K., 92 F.3d at 184 (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)).

D.  The Merits

Congress requires the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). Congress has directed that, as an incentive for prisoners' successful completion of a treatment program, "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3631(e)(2)(B). However, Congress granted the BOP discretion to categorically exclude inmates from eligibility for early release pursuant to 18 U.S.C. § 3621(e)(2)(B). See Lopez, 531 U.S. at 240; 28 C.F.R. § 550.58(a)(1). The statute provides:

> (2) Incentive for prisoners' successful completion of treatment program.--
>
> **(A) Generally.**--Any prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment provided under paragraph (1) of this subsection, shall remain in the custody of the Bureau under such conditions as the Bureau deems appropriate. If the conditions of confinement are different from those the prisoner would have experienced absent the successful completion of the treatment, the Bureau shall periodically test the prisoner for substance abuse and

>discontinue such conditions on determining that substance abuse has recurred.
>
>**(B) Period of custody.**--The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program **may be reduced** by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C.A. § 3621(e)(2). (emphasis added).

As an exercise of its discretion, the BOP, by regulation, categorically excludes from eligibility for early release under § 3621(e)(2)(B) inmates "who are not eligible for participation in a community-based program as determined by the Warden on the basis of his or her professional discretion." See 28 C.F.R. § 550.58(a)(1)(v); Lopez, 531 U.S. at 244. Program Statement 7310.04, entitled "Community Corrections Center (CCC) Utilization and Transfer Procedure," sets forth the BOP's eligibility standards for CCC placement. Specifically, it provides that inmates "in the following categories shall not ordinarily participate in CCC programs . . . [i]nmates who are assigned a 'Deportable Alien' Public Safety Factor." Program Statement 7310.04 ¶ 10.b.

The BOP assigns public safety factors to inmates because it has determined that "[t]here are certain factors which require increased security measures to ensure the protection of society." Security Designation and Custody Classification Manual, Program Statement 5100.07, ch. 7 at 1 (Jan. 31, 2002). BOP staff must assign the public safety factor "Deportable Alien" to an inmate as follows:

>A "Deportable Alien" is a male or female inmate who is a citizen of a foreign country, rather than the United States. In addition, the inmate shall be housed in at least a Low security level institution,

> unless the PSF has been waived.  This PSF also prevents placement in a CCC . . . .
>
> **The PSF shall not be applied when the Immigration and Naturalization Service (INS) or the Immigration Judge has determined that deportation proceedings are unwarranted and the Institution Hearing Program (IHP) Case Management Activity (CMA) assignment of NO IHP or IHP CMP ND is assigned.  Conversely, if the inmate is ordered deported (CMA of IHP CMP WD), the Deportable Alien PSH shall be applied regardless of the above criteria.  The Deportable Alien PSH shall also be applied when FCI Oakdale institution staff assign the inmate a CMA assignment of "OAK INS," regardless of the above criteria.  Cases with detainers for deportation investigations or other unusual situations will be evaluated individually.**

P.S. 5100.07, ch. 7 at 3-4 (emphasis in original).

     Petitioner maintains that the above language requires the BOP to remove the "Deportable Alien" public safety factor because the DHS has determined that removal proceedings are unwarranted.  This Court disagrees.  There is no dispute that immigration officials cancelled a Notice to Appear for removal in 2002 on the ground that, in light of the Extradition Agreement, removal proceedings would not be initiated until Petitioner was released from imprisonment and given a reasonable opportunity to depart on his own.  (Letter from Wendell Hollis, dated Aug. 20, 2002; Exhibit H to Pet.)  The letter states that "the Service has determined it appropriate to cancel the Notice to Appear lodged against [Eduardo Francisco Quezada-Ruiz.]  Upon completion of his term of imprisonment, your client should arrange for his immediate departure from this country or risk being presumed an intending immigrant."  (Id.)  Consistent with this letter, Susan Roy indicated in her declaration that Petitioner will be subject to removal if he manifests an intent to remain in the United States after the BOP releases him from his term of

11

imprisonment. (Roy decl. ¶¶ 7, 8.) Thus, Program Statement 5100.07 does not require the BOP to remove the "Deportable Alien" public safety factor.

The Court also rejects Petitioner's argument that the Extradition Agreement and the rule of specialty prohibit DHS from removing him until he completes the five-year term of supervised release. "The rule of specialty is based on principles of international comity and is designed to guarantee the surrendering nation that the extradited individual will not be subject to indiscriminate prosecution by the receiving government." Saroop v. Garcia, 109 F.3d 165, 168 n.6 (3d Cir. 1997) (quoting Leighnor v. Turner, 884 F.2d 385, 389 (8th Cir. 1989)). The rule of specialty prohibits the prosecution of a defendant for a crime other than the crime for which he was extradited. See United States v. Alvarez-Machain, 504 U.S. 655, 659 (1992); United States v. Rauscher, 119 U.S. 407, 430 (1886); 18 U.S.C. § 3192. The rule of specialty is codified in 18 U.S.C. § 3192, which provides in relevant part:

> Whenever any person is delivered by any foreign government to an agent of the United States, for the purpose of being brought within the United States and tried for any offense of which he is duly accused, the President shall have power to take all necessary measures for the . . . safekeeping of such accused person, and for his security . . . , until the final conclusion of his trial for the offenses specified in the warrant of extradition, **and until his final discharge from custody or imprisonment for or on account of such offenses, and for a reasonable time thereafter**, and may employ such portion of the land or naval forces of the United States, or of the militia thereof, as may be necessary for the safe-keeping and protection of the accused.

18 U.S.C. § 3192 (emphasis added).

This statute requires the President to safeguard an alien defendant who was extradited "until his final discharge from custody or imprisonment . . . and for a reasonable time thereafter."

12

18 U.S.C. § 3192.  This Court holds that the rule of specialty does not authorize a defendant to remain in the United States until he completes a term of supervised release following a term of imprisonment.  Cf. Cosgrove v. Winney, 174 U.S. 64, 68 (1899) ("The treaty and the statute secured to Cosgrove a reasonable time to return to the country from which he was surrendered, after his discharge from custody or imprisonment for or on account of the offense for which he had been extradited").

This reading of the rule of specialty is consistent with statutes governing supervised release and immigration.  Statutes governing sentencing clarify that a term of supervised release is distinct from a term of imprisonment.  See 18 U.S.C. § 3583(a).[5]  Moreover, the supervised release statute recognizes that aliens sentenced to supervised release will generally be deported before completing the term of supervised release.  See 18 U.S.C. § 3583(d)(3).  Specifically, § 3583(d)(3) provides:  "If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation."

---

[5] Section 3583, entitled "Inclusion of a term of supervised release after imprisonment," provides:

> **In general**.  The court, in imposing a sentence to a term of imprisonment . . . may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment, except that the court shall include as a part of the sentence a requirement that the defendant be placed on a term of supervised release if such a term is required by statute . . .

18 U.S.C. § 3583(a).

18 U.S.C. § 3585(d)(3).[6]  In fact, Petitioner's judgment of conviction recognizes that he may be removed before completion of the term of supervised release.

Immigration laws also support the government's position that the rule of specialty protects an alien for a reasonable period of time after his release from imprisonment.  Section 1231(a)(4)(A) provides that, with exceptions not relevant here, "the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment.  Parole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal."  18 U.S.C. § 1231(a)(4)(A).

Based on the foregoing, this Court holds that the BOP did not violate prison regulations or the rule of specialty by retaining the "Deportable Alien" public safety factor and determining that Petitioner is not eligible for placement in a CCC or early release.

### III.  CONCLUSION

For the reasons set forth above, the Court dismisses the Petition and the Complaint.

    s/Freda L. Wolfson
    FREDA L. WOLFSON, U.S.D.J.

Dated:      June 14      , 2005

---

[6] See also United States v. Williams, 369 F.3d 250 (3d Cir. 2004) ("We see from the language of § 3583 that Congress was aware that some defendants sentenced to supervised release would be deported yet chose not to provide for automatic termination of supervised release when the defendant was deported").